UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re John E. Ginther<br><br>and<br><br>Kelly A. Ginther,<br><br>                Debtors. | Bankruptcy No. 09-B-14527<br>Chapter 13<br>Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on the Debtors' Amended Motion to Determine the Value and Status of Beneficial Illinois Inc. Claim 2-1 and 6-1 as a Wholly Unsecured Claim and to Void the Lien of Junior Mortgagee (the "Beneficial Motion") and the Debtors' Amended Motion to Determine the Value and Status of HSBC Mortgage Services, Inc. Claim 10-1 as a Wholly Unsecured Claim and to Void the Lien of Junior Mortgagee (the "HSBC Motion"). For the reasons set forth herein, the Beneficial Motion is GRANTED and the HSBC Motion is DENIED.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

### FACTS AND BACKGROUND

The following facts and procedural history are taken from the Beneficial Motion and the

HSBC Motion. The Debtors filed a petition with this Court under Chapter 7 on April 23, 2009, and converted their case to Chapter 13 on August 6, 2009. The Debtors estimate that their home is currently worth $418,000.00. They allege that the home is encumbered by a first mortgage in favor of HSBC Bank, USA, N.A. (the "Senior Mortgagee") with a current balance of $429,619.87 (the "Senior Mortgage"), by a second mortgage in favor of HSBC Mortgage Services, Inc. ("HSBC"), with a current balance of $111,166.72 (the "HSBC Junior Mortgage"), and by a third mortgage in favor of Beneficial Illinois Inc. ("Beneficial"), with a current balance of $25,105.89 (the "Beneficial Junior Mortgage"). Because the Debtors believe the Senior Mortgage exceeds the value of the home, the Debtors filed motions seeking a determination that the HSBC Junior Mortgage and the Beneficial Junior Mortgage may be treated as unsecured claims and seeking to avoid the respective mortgage liens. The Debtors certified that they mailed a copy of the HSBC Motion and Beneficial Motions to HSBC and Beneficial, respectively. Neither creditor filed a written response, but counsel for HSBC appeared at the initial and subsequent hearings and raised an oral objection to the HSBC Motion. No one appeared on behalf of Beneficial.

## DISCUSSION

### 1. The Power to Avoid a Lien in Chapter 13

Section 506(a)[1] treats an allowed claim of a creditor secured by a lien on property in which the estate has an interest as a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property" and treats the remainder of the creditor's allowed claim as unsecured. 11 U.S.C.A. § 506(a) (West 2010). Thus, to the extent a creditor's allowed claim

---

[1] Unless otherwise noted, references to "Sections" are references to sections of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

exceeds the value of the collateral securing such claim, after taking into account other creditors' liens that are prior in interest, such portion of its claim will be treated as an unsecured claim despite its otherwise valid security interest. Section 506(d) states that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C.A. § 506(a) (West 2010). While at first glance Section 506(d), when combined with Section 506(a), would appear to automatically void a lien to the extent that the claim secured by such lien is 'undersecured,' the Supreme Court held in Dewsup v. Timm, 502 U.S. 410 (1992) that Section 506(d) gives no such power. The Court stated that it "was not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." Id. at 417. While the Court noted in a footnote that "we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code," Id. at 417, n.3, it held that the use of the term 'allowed secured claim' did not "take the same meaning in § 506(d) as in § 506(a)." Id. at 417. Therefore, rather than referring solely to the bifurcated portion which is deemed to constitute a "secured claim" under § 506(a), the Court found that the term in § 506(d) referred to a claim which (1) was 'allowed' pursuant to § 502, and (2) was secured by a lien with recourse to the underlying collateral. Id. at 415.

However, Dewsnup dealt with a debtor under Chapter 7, and the Court emphasized that "[h]ypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day." Id. at 416-17. The Court admitted that "[w]ere we writing on a clean slate, we might

be inclined to agree ... that the words 'allowed secured claim' must take the same meaning in § 506(d) as in § 506(a)," but was "not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." Id. This has led a number of courts, including two Northern District of Illinois Courts to conclude that the holding in Dewsnup does not apply to debtors in Chapter 13. See, e.g., In re Hernandez, 175 B.R. 962, 966 (N.D. Ill. 1994) (Nordberg, J.) ("Given the language of sections 1322 and 1327, the purpose of Chapter 13 of the Bankruptcy Code, and the persuasive analysis of many other courts that have considered this issue, the Court holds that Dewsnup is not applicable to the Chapter 13 proceeding at issue in this case."); Bank One, Chicago, NA v. Flowers, 183 B.R. 509, 517 (N.D. Ill. 1995) (Alesia, J.) ("This court, therefore, recognizes that the Supreme Court did not intend for its interpretation of § 506(d)'s phrase, 'allowed secured claim,' to extend beyond the context of the facts presented in Dewsnup and other similar Chapter 7 proceedings. Accordingly, this court is free to give § 506(d)'s phrase 'allowed secured claim' a different meaning in the Chapter 13 context, provided that such meaning conforms with Congress' stated and implied intentions in enacting Chapter 13."). Because, as discussed below, Congress expressly granted the power to modify liens in provisions such as § 1322(b)(2) and § 1327, these courts distinguished Dewsnup, and found that a Debtor has the power to strip an undersecured claim in Chapter 13. See Hernandez, 175 B.R. at 966 (listing cases holding that Dewsnup does not apply in Chapter 13 proceedings). Under this reasoning, § 506(a) and (d) would give the power to strip an undersecured lien in a Chapter 13 proceeding. But, even if Dewsnup was not distinguishable and § 506(d) was not a source of power to strip a lien, a Chapter 13 debtor would still have the power to strip a lien through other provisions of Chapter 13. The Bankruptcy Code gives the express power

to strip a lien through a plan or plan confirmation under Section 1322(b)(2) and Section 1327.

Section 1322(b)(2) provides that a Chapter 13 plan may, with certain limitations, "modify the rights of holders of secured claims." 11 U.S.C.A. § 1322(b)(2). The 'rights' of creditors referred to in the statute are those rights provided under state law, including those "reflected in the relevant mortgage instruments, which are enforceable under [the relevant state] law." Nobelman v. Am. Sav. Bank, 508 U.S. 324, 329 (1993). One of these rights is "the right to retain the lien until the debt is paid off." Id. Thus, the Bankruptcy Code provides for the power to modify or strip a lien through a Chapter 13 plan. An additional source for stripping a lien is in Section 1327. Under Section 1327(b), "the confirmation of a plan vests all of the property of the estate in the debtor" and under Section 1327(c), "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor ... is free and clear of any claim or interest of any creditor provided for by the plan." The court in Hernandez held that the 'free and clear' language "provides the mechanism by which Chapter 13 Debtors can strip down creditor's liens without resorting to Code section 506(d)." 175 B.R. at 967.

While Sections 1327 and 1322(b)(2) give the power to modify a lien, they only apply if a plan can be confirmed. However, under Section 1325(a)(5)(B), a plan can be 'crammed-down' on an objecting holder of an "allowed secured claim" if (1) the plan proposes to pay such creditor at least the value, as of the effective date of the plan, of the allowed amount of such allowed secured claim, (2) if the payments are to be periodic they will be in equal monthly installments,[2] and (3) the plan provides that the holder retain the lien securing such claim until the earlier of discharge or payment

---

[2] And if the collateral is personal property, the payments are sufficient to provide adequate protection.

Page 5 of 12

in full, and provides for the retention of the lien if the case is converted or dismissed before completion of the plan. Section 1325(a)(5) makes reference to "allowed secured claims" and thus there is a question which definition applies. Courts in the Northern District of Illinois have found that the use of the term "allowed secured claim" in Section 1325(a)(5)(B) refers to the bifurcated secured portion under Section 506(a), and not to the broader 'Dewsnup' definition. See, e.g., Bank One, 183 B.R. at 517 ("Therefore, it seems clear that the language of § 1325(a) is connected with the language of § 506(a) and only requires that Chapter 13 creditors retain an enforceable lien on the 'allowed secured claim,' as described by 506(a)."); In re Hernandez, 175 B.R. at 966-67 (holding that "the meaning of 'allowed secured claim' in Section 1325 is the same as the meaning of that term in Section 506(a)"). Therefore, except with respect to the exceptions stated in § 1322(b)(2) and discussed below, § 1325(a)(5)(B) together with § 1322(b)(2) gives the debtor the power to force a creditor to accept a plan which will treat the undersecured portion as an unsecured claim and which will terminate the creditor's lien upon payment in full of the plan, despite the fact that the creditor has not been paid his entire claim in full. While § 1325(b)(5)(B) gives a non-consenting secured creditor the right to retain its lien until discharge or payment in full, the court in both Bank One and Hernandez held that the provision only protected the creditor's lien in respect of the bifurcated allowed secured claim. Hernandez, 175 B.R. at 968 (holding that "'retain the lien securing such claim' as used in Section 1325 is best interpreted to mean that 'such claim' refers to the allowed secured claim as defined in Section 506(a)"); Bank One, 183 B.R. at 518 (interpreting § 1325(a)(5)(B) to mean that a plan must be confirmed if "such plan provides that the holders of allowed secured claims (in the § 506(a) sense) retain the liens securing such allowed secured claims

and if the value of the property distributed under the plan is equal to the value of such <u>allowed</u> <u>secured</u> claims") (emphasis added). If the Debtors are correct that even the Senior Mortgage is undersecured, then after the application of Section 506(a), there would be no secured claim with respect to the junior mortgagees, and therefore they would neither have a right to object under Section 1325(a)(5), nor have a lien which must be retained under such provision.

**2. Restrictions on the Power to Modify the Rights of the Holder of a Claim Secured by a Principal Residence**

While Section 1322(b)(2) gives the power to strip a lien through a plan, it contains an exception providing that the plan may only "modify the rights of holders of secured claims, <u>other</u> <u>than a claim secured only by a security interest in real property that is the debtor's principal</u> <u>residence</u>." <u>Hernandez</u> and <u>Bank One</u> dealt with liens on cars, and therefore this exception did not apply. But, here, the Debtors seek to avoid mortgages on their principal residence. The Supreme Court held in <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324 (1993), that Section 1322(b)(2) bars strip-downs of partially undersecured creditors' liens on a debtor's principal residence. The Court noted that the statute refers to modifications of "rights" of "holders of secured claims" rather than the modification of "claims." <u>Id.</u> at 328. Therefore, the rights modified did not need to directly relate to the secured claim. While the Court noted that the petitioners "were correct in looking to §506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," the Court found that the creditor was undisputedly a "holder of a secured claim" because even after applying §506(a), the creditor still had an allowed secured claim for the $23,500 value of the home.

Id. at 329. Because the creditor was undisputably a holder of a secured claim, the Court found that Section 1322(b)(2) barred the debtor from modifying any of that creditor's rights, even those not directly related to the secured claim.

In Nobelman, the debtor sought to strip-down the lien of a partially undersecured mortgage holder, and it was undisputed that at least a portion of the creditor's lien was secured, even after the application of §506(a). The Court's ruling turned on this fact, because the Court held that the creditor was undisputedly a "holder of a secured claim" for purposes of §1322(b)(2). In contrast, here even the balance on the Senior Mortgage is greater than the value of the property, so that the junior mortgages that the Debtor seeks to 'strip-off' are completely undersecured. A number of circuit courts, as well as the District Court for the Northern District of Illinois, have held that Nobelman's ruling was limited to partially undersecured mortgage holders and §1322(b)(2) does not protect the rights of fully undersecured junior mortgage holders. See In re Holloway, No. 01-C-4052, 2001 WL 1249053, at *4 (N.D. Ill. Oct. 16, 2001) (Darrah, J.) (holding that, where the "senior mortgage fully encumbers" the property, the junior mortgage holder "does not have a secured claim" and is not protected by Section 1322(b)(2)) (citing Tanner v. FirstPlus Fin., Inc. (In re Tanner), 217 F.3d 1357, 1360 (11th Cir.2000) ("Any claim that is wholly unsecured ... would not be protected from modification under section 1322(b)(2)."); Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277, 280 (5th Cir.2000) ("[T]he Bankruptcy Code's antimodification provisions do not protect secondary lienholders whose interest is not supported by at least some value in the debtor's principal residence."); McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 612 (3d Cir.2000); Domestic Bank v. Mann (In re Mann), 249 B.R. 831, 837 (B.A.P. 1st Cir.2000); Lam

v. Investors Thrift (In re Lam), 211 B.R. 36, 41 (B.A.P. 9th Cir.1997).[3] See also In re Waters, 276 B.R. 879, 882 (Bankr. N.D. Ill. 2002) (Squires, J.) (noting that several bankruptcy courts had held Nobelman to preclude lien stripping of wholly unsecured junior mortgage liens, including Judge Schmetterer in Barnes v. Am. Gen. Fin. (In re Barnes), 207 B.R. 588 (Bankr. N.D. Ill.1997), but joining the majority position, which included the courts of appeals of the Second Circuit, Third Circuit, Fifth Circuit, Sixth Circuit, and Eleventh Circuits); Havel v. Household Mortgage Servs. (In re Havel), Nos. 01-32782, 02-3049, 2002 WL 31944059, at *5 (Bankr. S.D. Ill. 2002) (Fines, J.) ("In sum, the unanimous opinion of all Circuit Courts of Appeal and Bankruptcy Appellate Panels interpret the Supreme Court's decision in Nobleman to require a lien holder on residential real estate to pass a threshold test of a genuine secured interest under § 506(a) before the antimodification provision of § 1322(b)(2) applies."). Therefore, the Court holds that § 1322(b)(2) does not prevent a creditor from treating a wholly undersecured junior mortgage holder's claim as unsecured and does not prevent a Debtor from avoiding the creditor's lien through a Chapter 13 plan or through Section 506(d).[4]

---

[3]The court in Holloway also noted that Congress's policy in creating the antimodification provisions was to encourage the flow of capital into the home lending market, but that "because second mortgagees are not in the business of lending money for home purchases, the same policy reasons for protection of first mortgagees under § 1322(b)(2) do not exist for second mortgagees." Holloway, 2001 WL 1249053, at *4 (quoting In re Lam, 211 B.R. at 41).

[4]HSBC raised a concern that, if the mortgage was avoided through Section 506(d) prior to discharge, that they could end up prejudiced if prior to discharge the case converted to Chapter 7, where Dewsnup precludes lien stripping, or was dismissed. However, the Bankruptcy Code contains specific protections against this in Section 349(b)(1)(C) (reinstating "any lien voided under section 506(d)" upon dismissal of case) or Section 348(f)(1)(C) (with respect to any case converted from chapter 13, "the claim of any creditor holding security as of the date of the petition shall continue to be secured by that security ... notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under

### 3. The Procedure Required to Strip a Junior Mortgage

There is some disagreement among courts over whether a debtor seeking to strip-off a completely underwater junior mortgage must do so through an adversary proceeding, or if it can be accomplished through a motion or simply through a plan. Compare In re Forrest, No. 09-B-20874, 2009 WL 5948840 (Bankr. N.D. Ill. Sept. 16, 2009) (Schmetterer, J.) (holding that an adversary proceeding is required) with In re King, 290 B.R. 641 (Bankr. C.D. Ill. 2003) (holding that an adversary proceeding is not required). However, this Court agrees that the Bankruptcy Rules require an adversary proceeding. Fed. R. Bankr. P. 7001(2) defines a proceeding "to determine the validity, priority, or extent of a lien or other interest in property" as an adversary proceeding. The counter-argument is that a proceeding like the current one is not really a proceeding "to determine the validity" of a lien, but is rather a proceeding to "determine the value of a claim secured by a lien," which can be accomplished by motion under Fed. R. Bankr. P. 3012. The argument is that the movant is simply determining the value of the collateral, and the consequent determination of the extent that the claim is bifurcated between secured and unsecured portions by Section 506(a), but without directly impacting the lien.

However, it is especially difficult for the Debtors to argue that they are merely seeking to determine the value of the property or claim since their motion expressly requests an order voiding the junior mortgages. But, even if the motion did not expressly request such relief, it is clear that the only purpose in valuating the property is to treat the claims as unsecured and void the mortgages.

---

chapter 13").

If the Debtors were simply seeking a determination that HSBC's and Beneficial's claims should be classified as 'unsecured' for purposes of bankruptcy, without affecting their mortgages in the property, then the creditors would still be able to take action against the property post-discharge, such as foreclosing on the property. Moreover, the plan that the Debtors have proposed not only proposes to treat the claims of HSBC and Beneficial as fully unsecured, but would, under Paragraph B.3, "terminate" the HSBC Junior Mortgage and Beneficial Junior Mortgage upon the grant of discharge at the end of the plan. It is therefore clear that the Debtors are seeking more than a valuation of the property and HSBC's and Beneficial's claims. They are seeking to avoid the lien - and under Rule 7001(2), this is an adversary proceeding.

A creditor can waive the right to an adversary proceeding, see In re Pence, 905 F.2d 1107 (7th Cir. 1990), and as the Supreme Court recently held in United Student Aid Funds, Inc. v. Espinosa, No. 08-1134, 2010 WL 1027825 (Mar. 23, 2010), a creditor can lose its right to an adversary proceeding by failing to object, at least where it received reasonable or actual notice. Espinosa clarified that the Bankruptcy Rules are procedural rules, Id. at *7, and therefore overruled In re Hanson, 397 F.3d 482 (7th Cir. 2005), which had held that constitutional due process required compliance with notice provisions in the Rules.[5] But a procedural rule is still a procedural rule, and HSBC has not waived its right and has instead raised an objection. Therefore, the Court will deny the HSBC Motion. If the Debtors wish to strip the HSBC Junior Mortgage and the creditor will not consent to a procedure by motion, then they should do so by means of an adversary proceeding. In

---

[5] Since HSBC has participated in the hearings on the HSBC Motion, it is clear that they have received actual notice, and therefore their constitutional due process right to notice has been satisfied. Beneficial has not appeared to object, but the Debtors have certified that they mailed notice of the motion and hearing to Beneficial.

contrast, Beneficial has not objected to the motion, despite apparently receiving notice of it, and therefore the Beneficial Motion is granted.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Beneficial Motion and DENIES the HSBC Motion.

THEREFORE, IT IS ORDERED that

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: April 22, 2010

The Honorable Manuel Barbosa
United States Bankruptcy Judge